■ TRIBUNE PRINTING CO., INC., Respondent-Appellant, v 263 NINTH AVENUE REALTY, INC., et al., Appellants-Respondents. — Order, Supreme Court, New York County (H. Schwartz, J.) entered on October 13, 1981, which granted reargument and upon reargument adhered to the original determination except to the extent of reinstating plaintiff's third cause of action in the complaint, unanimously modified, on the law, so as to deny plaintiff's motion for a preliminary injunction and to grant defendant summary judgment dismissing the complaint; and as thus modified, the order is otherwise affirmed, with costs. The appeal from the order entered on July 31, 1981, which,

*inter alia,* granted plaintiff's application for a preliminary injunction enjoining defendants from taking action in Civil Court to evict plaintiff as tenant of the subject premises and dismissed plaintiff's third cause of action in the complaint, is unanimously dismissed, without costs, as superseded by the appeal taken by defendants from the aforesaid order entered October 13, 1981. Plaintiff, Tribune Printing Co. Inc. (Tribune) leased the seventh floor of a commercial 10-story building used by those in the printing industry. Tribune's lease had been renewed twice with the last renewal terminating on January 31, 1981. In May, 1980, defendant 263 Ninth Avenue Realty Inc. (263 Inc.) became the landlord, purchasing the building from the prior owner. Defendants, Tanagraphics, Inc. (Tanagraphics), Triton Press, Inc. (Triton) and Creative Lithography, Inc. (Creative), are the sole shareholders of 263 Inc. as well as being tenants in the building. In 1979 Derek Limbocker, chairman of the board of Triton, sought to purchase the building. He obtained a contract of sale from the Heywood estate entity, then owners of the premises, conditioned upon obtaining financing from the Industrial Development Agency (IDA). Plaintiff claims that Limbocker orally promised its lease would be renewed at the expiration of the existing lease, if plaintiff would send a letter as part of the IDA financing application, reciting that if Tribune were forced to relocate at the expiration of its lease term, it would move out of New York City. Plaintiff did send such a letter on October 25, 1979. This financing application by Limbocker to the IDA was denied and the purchase contract was aborted. Shortly thereafter, Triton, Creative and Tanagraphics formed defendant 263 Inc. to purchase the building, again conditioned upon obtaining IDA financing. Reapplication for such financing was made, once more allegedly using plaintiff's letter. The financing was obtained and defendant 263 Inc. was successful in purchasing the building. Plaintiff claims it attempted to renegotiate a renewal lease on the basis of the alleged oral promise. In a letter dated May 30, 1980, the plaintiff congratulated the defendant corporation on its purchase of the building and stated "[o]ur lease will be coming to an end soon, and we would like to negotiate renewal with your company at your earliest convenience." Plaintiff's efforts proved futile. Defendant's attorney, by a letter dated January 26, 1981, reminded plaintiff its lease would expire on January 31, 1981 and that the lessor was anxious to obtain possession. When plaintiff failed to vacate, the defendant brought holdover eviction proceedings in Civil Court in February, 1981. In March of 1981, plaintiff instituted this action seeking specific performance of the alleged agreement to renew the lease, damages for fraud and breach of contract and also seeking to enjoin defendant from evicting plaintiff. Plaintiff made a motion for a preliminary injunction to enjoin defendants from proceeding to evict plaintiff in Civil Court. Defendants cross-moved for summary judgment in their favor dismissing the complaint. Special Term granted plaintiff's motion for a preliminary injunction, but dismissed the third cause of action in fraud. On plaintiff's motion for leave to reargue that portion of the original order dismissing the third cause of action, Special Term amended its original order solely to reinstate the third cause of action. Subdivision 2 of section 5-703 of the General Obligations Law provides: "A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing." Plaintiff alleges that its transmittal of the letter of October 25, 1979, was "part performance" sufficient to take this case outside the Statute of Frauds. However, such act will not be considered part performance sufficient to avert the Statute of Frauds unless the act is unequivocally

referable to the alleged agreement. "Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. There must be performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing." (*Burns v McCormick,* 233 NY 230, 232.) We cannot say that the letter of October 25, 1979, is "unequivocally referable" to the alleged oral agreement as claimed by plaintiff. In addition, even assuming the Statute of Frauds did not apply to the case at bar, there was nothing more than a promise by defendant to come to a future agreement on the terms and conditions of a new lease. As noted, plaintiff's letter to defendant landlord stated its intent to "negotiate" renewal of the lease. Thus, the agreement, if any, was simply an "agreement to agree" in the future and hence is unenforceable. "[B]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained. Otherwise, a court, in intervening, should be imposing its own conception of what the parties should or might have undertaken, rather than confining itself to the implementation of a bargain to which they have mutually committed themselves. Thus, definiteness as to material matters is of the very essence in contract law. Inpenetrable vagueness and uncertainty will not do (1 Corbin, Contracts, § 95, p 394; 6 Encyclopedia of New York Law, Contracts, § 301; Restatement, Contracts 2d, § 32, Comment *a*). Dictated by these principles, it is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable (*Willmott v Giarraputo,* 5 NY2d 250, 253; *Sourwine v Truscott,* 17 Hun 432, 434). This is especially true of the amount to be paid for the sale or lease of real property (see *Forma v Moran,* 273 App Div 818; *Huber v Ruby,* 187 Misc 967, 969, app dsmd 271 App Div 927; see, generally, 58 ALR 3d 500, Validity and Enforceability of Provision for Renewal of Lease at Rental to be Fixed by Subsequent Agreement of the Parties). The rule applies all the more, and not the less, when, as here, the extraordinary remedy of specific performance is sought (11 Williston, Contracts [Jaeger 3d ed], § 1424; Pomeroy, Equity Jurisprudence, § 1405)." (*Martin Delicatessen v Schumacher,* 52 NY2d 105, 109-110.) It follows, as well, that the third cause of action based upon fraud is also not viable since the defendant, at most, made a promise to enter into future negotiations for a renewal of the lease, and did not misrepresent any existing fact. Representations are not actionable if they are promissory in nature or relate merely to future expectations (*Adams v Clark,* 239 NY 403). Likewise, there is no basis for the second cause of action based upon promissory estoppel. In New York that is reserved for a limited class of cases based on unusual circumstances not applicable here. (See *Swerdloff v Mobil Oil Corp.,* 74 AD2d 258, 261-263; *Smith & Co. v USLIFE Corp.,* 554 F2d 34, 36.) The fourth cause of action seeking consequential damages resulting from the alleged breach by defendant of the oral agreement is, of course, not viable for the same reasons set forth with respect to the first cause of action for specific performance of the agreement. Finally, the preliminary injunctive relief granted by Special Term must fall, since the predicate for such relief no longer exists. The pendency of an action is an indispensible prerequisite to the granting of a preliminary or temporary injunction (*Evans v Evans,* 273 App Div 895). Concur — Murphy, P. J., Kupferman, Carro, Silverman and Asch, JJ.